301 So.2d 357 (1974)
STATE of Louisiana
v.
Windall HICKS.
No. 53888.
Supreme Court of Louisiana.
January 14, 1974.
On Rehearing October 11, 1974.
*358 Robert P. McLeod, Kirby & McLeod, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Charles A. Traylor, II, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
This appeal by Windall Hicks is taken from his conviction for armed robbery committed on December 28, 1971 at the Globe Grocery Store located in the City of Monroe, Parish of Ouachita. Hicks was sentenced to serve a term of ten years at hard labor.
Bills of Exceptions Nos. 1 and 16 raise the issue of the legality of the search warrant which issued for the search of the residence of Bessie Lee Rollins, mother of Berlin Rollins. The contention is that the affidavit supporting the warrant is insufficient.
A consideration of this contention is not necessary under the particular facts of the case. The warrant issued was for the search of the premises at which Bessie Lee Rollins resided. Her son, Berlin Rollins, was arrested and, after trial, acquitted in the matter.
At the time of the search of the Rollins home, appellant Hicks was not present, nor was he living at this residence.
The State urges that Hicks has no standing to suppress the evidence seized under this search warrant, for he had no interest in the premises searched, claimed no interest in the things seized (a coat and a cap), and was not present when the search was, in fact, made.
We agree with the State. Appellant was not on the premises at the time of the search and seizure, had no proprietary or possessory interest in the premises searched, was not charged with an offense which included, as an essential element of the offense charged, possession of the seized evidence (coat and cap) at the time of the search and seizure. Furthermore, appellant never alleged any legitimate interest in the coat and cap seized. Consequently, appellant is without standing to *359 complain of the alleged illegal search and seizure herein. Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); State v. Vassel, 285 So.2d 221, La.1973 (rehearing denied, 285 So.2d 221, La.1973); State v. Rouse, 256 La. 275, 236 So.2d 211 (1970); State v. Page, 251 La. 810, 206 So.2d 503 (1968).
Bills of Exceptions Nos. 1 and 16 are without merit.
Bill of Exceptions No. 2 was reserved to the overruling of appellant's objection to the remark made by the Assistant District Attorney in his opening statement to the jury that the State would offer evidence showing that on December 30, 1971 at 4:00 a. m., less than thirty-six hours following the Globe Food Store robbery, the defendants carried out a certain course of conduct culminating in the robbery of a 7-11 food store.
Thereafter, during trial, objections were made when testimony relating to the robbery of this 7-11 store was introduced. These latter objections are the basis for Bills of Exceptions Nos. 8 through 15.
Appellant contends that the evidence introduced concerning the 7-11 store robbery for which he was not on trial can in no way be said to be admissible to prove system, knowledge or intent. He relies upon the holdings in State v. Jordan, 276 So.2d 277 (La.1973); State v. Prieur, 277 So.2d 126 (La.1973); State v. Moore, on rehearing, 278 So.2d 784 (La.1973).
The State asserts that the evidence of the 7-11 store robbery was introduced under the authority of R.S. 15:445 and 446. It points to the fact that this robbery was committed within two days after the one for which defendant was being tried. The record, it submits, shows the common system and scheme of the crimes and similarity of actions in the commission thereof. Thus, the State contends, State v. Prieur is not applicable on the facts of this case.
In order to determine the merits of the contention raised by appellant in these bills, we have reviewed the entire transcript of the trial which was made part of the record on appeal.
Appellant was prosecuted for the armed robbery of the Globe Food Store in Monroe. This store adjoins the Texas Street Housing Project. At about 9:00 p. m. on December 28, 1971, two black males robbed the assistant manager of the store, Larry Robertson, at gunpoint. There were two other employees in the store at the time, namely, Shirley Mitchell and David Corerro. The two robbers entered the store and proceeded to the glass-enclosed office where Robertson was located; thereafter, one of them, holding a .32 caliber blue steel revolver, informed Robertson that this was a holdup and ordered him to place all the money in a moneybag which was carried out of the store by the other robber. About $4,000.00 was taken in the robbery. The testimony was that the robbers left on foot in the direction of the housing project. A detailed description of the robbers was taken from the victim and two witnesses by the investigating police officer. Robertson was certain that the gun used in the robbery was a .32 caliber blue steel revolver, as he had one of his own. Shirley Mitchell had recognized Hicks as having been in the store before on several occasions. All witnesses identified Hicks as the gunman. The robbers were not apprehended.
On December 30, 1971, at about 3:15 a. m., some thirty-six hours after the above robbery, Jay Via, the night manager of the 7-11 food store located on Jackson and Plum Streets (about one mile from the Globe store, but in the same general area of town), noticed a yellow Mustang passing the store several times at a slow rate of speed. Via had been previously given a description of the Globe store robbers by his brother-in-law, who was a Monroe police officer. Subsequently, the car pulled up, and two black males came into the store. They inquired about the purchase of shotgun shells in order to go man hunting. Via testified that he immediately became *360 suspicious of the two men, since they fitted the description given to him by his brother-in-law of the Globe store robbers. Via told the men that he did not have the type of shells they needed and referred them to another 7-11 store about a mile away. He identified Hicks as the man with whom he had talked that night. Via further testified that they had inquired about the purchase of .32 caliber ammunition. Vic Barton, a friend of Via, was in the store at the time. He called the police on Via's instructions, advised them concerning the possible armed robbery of the other store, and gave them the license number of the yellow Mustang which Via had been able to secure.
Almost immediately after the two men left the 7-11 store on Jackson and Plum Streets, they arrived at the 7-11 store to which they had been sent by Via. This store was located at Jackson and Sandifer Streets. Mark Stehlick, the night manager, was alone in the store. He testified that two black males entered the store and inquired about the purchase of shotgun shells which they needed in order to kill a man. He was paid for the shells with a $20.00 bill, but was told at that time by one of the men who had pulled a gun that he wanted the $20.00 bill back, together with the rest of the money in the register. This amounted to about $135.00. Stehlick never saw a car either before or after the robbery. When asked to describe the weapon, he stated that he did not know anything about guns, but it was a small bluish gun.
The police, responding to Barton's call from the first 7-11 store, arrived on the scene of the second 7-11 store as the two robbers were pulling off. The police pursued the yellow Mustang, during which there was an exchange of gunfire. The robbers were followed into the Texas Street Housing Project where they abandoned their car and fled on foot into the project. The suspects were apprehended shortly thereafter, and the .32 caliber revolver was recovered the next day in the grass about three-quarters of a block from where the car had been abandoned.
The issue presented to us in these bills is whether the reference by the Assistant District Attorney in his opening statement to the 7-11 store robbery and the testimony of the witnesses concerning this robbery were admissible in evidence to prove system, knowledge or intent.
Evidence of similar acts is admissible to show system, knowledge or intent under R.S. 15:445 and 446. We explained in State v. Spencer, 257 La. 672, 243 So.2d 793 (1971) that crimes of "system" are those acts and offenses which are of like nature and exhibit like methods or plans of operation. Spencer was a prosecution for armed robbery, and we held that the evidence as to another armed robbery was admissible since it followed the same modus operandi as the armed robbery charged and was related in time and location.
Clearly, the armed robbery of the 7-11 store was similar to the Globe store robbery. Both were armed robberies involving food stores; both were committed during darkness; both were perpetrated by two black males of the same general description; both were in the same general area of Monroe; both involved the use of a .32 caliber blue steel revolver; the robbers in both cases fled either in the direction of or to the Texas Street Housing Project; in point of time, both robberies were within thirty-six hours of each other. Therefore, the evidence was admissible to show system.
Additionally, this Court has previously held that intent is an essential element of the crime of armed robbery, and evidence of similar offenses is admissible to show intent under R.S. 15:445 and 446. State v. Welch, 250 La. 719, 198 So.2d 902 (1967). See State v. Montegut, 257 La. 665, 243 So.2d 791 (1971). Hence, the evidence of the 7-11 store robbery was also admissible to show intent.
*361 Furthermore, the evidence in regard to the 7-11 store robbery was relevant to issues involved in this case. First, the evidence was relevant as to the identification of Hicks. The manager of the first 7-11 store was able to identify Hicks based upon a description he had previously received of the men who had robbed the Globe store. This testimony was certainly relevant in corroborating the identity of Hicks by the victim and witnesses of the Globe store robbery. Second, the relevancy of the .32 caliber revolver in the Globe store robbery cannot be disputed. This gun was recovered only after a series of events involving the 7-11 store robbery. Accordingly, admission of evidence regarding these events constituted a necessary predicate to the introduction of the gun for identification by the victim of the Globe store robbery. Further, we have no difficulty in concluding that the probative value of this evidence outweighs any prejudicial effects thereof. Therefore, the evidence of these related matters was admissible.
Accordingly, there is no merit to Bill of Exceptions No. 2 and Bills of Exceptions Nos. 8 through 15.
Bills of Exceptions Nos. 3 through 7 were reserved during trial when the State introduced testimony concerning lineup identifications as well as in-court identifications made by the witnesses of the Globe store robbery. The trial testimony revealed that photographs had first been submitted to these witnesses. Appellant alleges that the photographic identification procedure used by the State was so impermissibly suggestive that not only did it violate his right to due process, but the procedure tainted subsequent lineup and in-court identifications so as to render them inadmissible.
The adverse rulings by the trial judge resulted in the reservation of these bills.
On December 29, 1971, the day after the Globe store robbery, the three witnesses to this crime were shown seventeen photographs by the police. The picture of appellant Hicks was not among them. No identification was then made by these witnesses. Subsequently, on December 30, 1971, after the arrest of appellant and Rollins in connection with the 7-11 store robbery, two of these witnesses (Robertson and Corerro) were shown a group of seven photographs. On January 4, 1972, the third witness (Mitchell) was shown the same set of seven photographs.
The tenor of the objection by appellant is that two of these seven photographs were of Hicks and Rollins, and the remaining were the same five photographs which were part of the seventeen first shown to the witnesses on December 29, 1971. In addition, appellant points out that at the time Mitchell and Corerro viewed the group of seven photographs, they were aware that Hicks and Rollins had been picked up in connection with the 7-11 store robbery.
It is thus argued that this procedure of photographic identification was "impermissibly suggestive" and in violation of the ruling in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).
As stated in State v. Franklin, 279 So.2d 163 (La.1973): "The claim of unduly prejudicial identification in each instance has been held by this Court to be determined upon all the surrounding circumstances. State v. Junius, 257 La. 331, 242 So.2d 533 (1971)."
Larry Robertson had a clear view of Hicks on the night of the robbery when the money was taken from him at gunpoint in the well-lighted food store. He testified that when he was shown the photographs, no one in any way indicated, either by word, motion or by any inference, that any of the people in the pictures were suspect. All were pictures of members of the Negro race. Robertson stated that his identification in court was made upon a "flesh and blood" observation and was not based upon any other source.
*362 Shirley Mitchell testified that she picked appellant's picture from the photographs. There was some interrogation concerning her being told by the police that one of the men was picked up after the 7-11 store robbery. However, she testified that this was not told to her until "after I had looked at the pictures." She also testified that Hicks had been in the store on several occasions prior to the robbery and that she recognized him on the night of the robbery.
David Corerro gave a description of the gunman. He, too, had a clear view of the events on the night of the robbery. Correrro viewed the photographs several times at the police station and once at the store. On the occasion of their being presented at the store, he recognized the man with the gun from his observation of him on the night of the robbery. Corerro stated that when he viewed the photographs, no statement was made to him by anyone; he was simply asked to look at the pictures to see if he recognized the robbers.
The record substantiates the position of the State that no suggestions were made by the police officers to these witnesses when they picked out the photographs. Furthermore, no attack is made upon the procedure employed in the lineups. The incourt identifications of Hicks were made from independent recollection of the gunman by the witnesses, not from photographs or suggestions at the lineup. No attempt was made to influence selection of a particular photograph by either word or action during their display.
Accordingly, we find that the contention of appellant that the photographic identification procedure was impermissibly suggestive is without foundation. Therefore, we conclude that the in-court identifications had a source independent of the photographic and lineup identifications and did not violate appellant's due process rights.
There is no merit to Bills of Exceptions Nos. 8 through 15.
For the reasons assigned, the conviction and sentence are affirmed.
CALOGARO, J., concurs.
BARHAM, J., dissents with reasons.
TATE, J., dissents. The majority opinion is contrary to State v. Prieur and State v. Jordan.
DIXON, J., dissents.
BARHAM, Justice (dissenting).
The majority have erroneously ruled that the testimony concerning another robbery could be introduced in this case to prove system, knowledge, or intent.
The robbery for which the defendant was tried occurred in the early evening. Two black males robbed Globe Food Store and escaped on foot into an adjoining housing project. The manager of the store gave a detailed description of the robbers and identified the gun used to commit the robbery as a .32 caliber blue steel revolver. Two other employees also gave detailed descriptions of the robbers. One of the employees recognized that one of the robbers, the defendant Hicks, had been in the store on several occasions previous to the robbery. All witnesses identified the defendant Hicks as the gunman in the robbery. Intent was not a question at issue for the robbers took $4,000. The majority have concluded that the evidence of a robbery which occurred two days later was admissible in this trial to prove system. The later robbery is in no wise similar to the one for which the defendant was tried unless it be said that all robberies of groceries committed with pistols at night are systematic, and that therefore, every robbery committed under such circumstances is admissible against every defendant to establish his system.
The second robbery occurred in the early morning hours two days after the robbery for which the defendant was tried. Two black males using a yellow Mustang robbed *363 the manager of a 7-11 store. In the robbery for which defendant was charged, the robbers entered the store, went directly to the manager, held the .32 caliber blue steel revolver on him, told him it was a hold-up and ordered him to place all the money he had in a money bag. In the 7-11 robbery two black males entered the store and inquired about the purchase of shotgun shells which they needed in order to kill a man. The manager was paid for the shells with a $20 bill, but then was told by the man who had pulled a gun, that he wanted the $20 bill back, with the rest of the money in the register. The two robbers then obtained about $135. The police who had been alerted to the 7-11 robbery before its occurrence, arrived at the store as the robbers were pulling off in the yellow Mustang. The police followed the robbers into the Texas Street Housing Project where the robbers abandoned the car and fled on foot.
The defendant on trial and another black male were apprehended shortly thereafter and arrested for the robbery of the 7-11 store. The .32 caliber blue steel revolver was recovered within a block of the abandoned car the next day. The majority have concluded the evidence was admissible to show system upon this holding:
"Clearly, the armed robbery of the 7-11 store was similar to the Globe store robbery. Both were armed robberies involving food stores; both were committed during darkness; both were perpetrated by two black males of the same general description; both were in the same general area of Monroe; both involved the use of a .32 caliber blue steel revolver; the robbers in both cases fled either in the direction of or to the Texas Street Housing Project; in point of time, both robberies were within thirty-six hours of each other. * * *"
The majority have cited State v. Spencer[*] to support their claim that these offenses are crimes of system. A quick perusal of that case will indicate that systematic acts and offenses must be so much alike in detail as to exclude the possibility of any one else committing the other offense. The "modus operandi" must be so identical as to name the perpetrator of the crime as though he were identified in person.
The majority add that the extraneous offense was admissible to prove intent. Intent was not an issue in the trial which we review.
Finally, the majority urge the evidence of the 7-11 robbery admissible as relevant to identification of the defendant, Hicks. The manager of the 7-11 store which was robbed was totally unable to identify Hicks. The robbers of the 7-11 store had visited another 7-11 store before the robbery. It is from the manager of this nonrobbed 7-11 store that the identification of Hicks is given. The victim and the witnesses at the Globe store were positive in their identifications and particularly of Hicks. The identification of two robbers of one store does not of itself identify the robbers of another store. The connexity between the two robberies must be well established for the evidence of the extraneous offense to be used to identify the person on trial.
I respectfully dissent.

ON REHEARING
BARHAM, Justice.
We granted rehearing in this case to reconsider our disposition on original hearing of defendant's bills of exceptions complaining of the admission into evidence of testimony of another crime to prove system, knowledge or intent.
The evidence of which defendant complains concerns an armed robbery which took place about thirty hours after the armed robbery which is the basis of the instant prosecution. The statutory law concerning *364 evidence of other crimes, La.R.S. 15:445 and La.R.S. 15:446, and our jurisprudence thereunder[1] determine the impropriety of the admission of this unconnected evidence.
La.R.S. 15:445 provides:
"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction."
La.R.S. 15:446 provides:
"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged."
The only purpose for which evidence of the latter armed robbery could have been introduced, under the facts of this case, was to prove system or modus operandi. Guilty knowledge and intent of the defendant were not at issue; the defendant and his accomplice absconded with $4,000. See State v. Prieur, 277 So.2d 126 (La.1973). In State v. Spencer, 257 La. 672, 243 So.2d 793 (1971) we stated:
"* * * the jurisprudence of our state and of the majority of other jurisdictions appears to define crimes of a `system' as those acts and offenses which are of a like nature and exhibit like methods or plans of operation. * * *"
Therein we noted that although robbery is not an offense of "system" when "system" is meant to apply to continuity of activity for the completion of an offense, our jurisdiction and many others allow evidence of other offenses to prove what is called "system" in robbery prosecutions. Although the Court on first hearing referred to the Spencer decision and noted that we there upheld the admission of evidence of another crime to show system, an examination of Spencer reveals that a comparison of the offense being prosecuted and the act or acts offered to prove system must show sufficient similarity of system to identify one with the other.
In comparing the two offenses in the instant case, it may be seen that the only similarities pertinent to the issue of substantially identical modus operandi are the nature of the settings in which both robberies occurred (both offenses were perpetrated in business establishments which primarily sold food) and the type of weapon used by the armed bandit (a .32 caliber blue steel revolver). The fact that the offenders were black in each case has no bearing on similar modus operandi. The business establishments where the robberies took place were two miles apart (in Spencer, the same business place attended by the same parking lot attendant was the scene of both offenses). The robbery for which this defendant was prosecuted took place at about 9:00 P.M.; the second robbery was perpetrated in the early morning hours. In the first robbery, the perpetrators were very direct in their approach to the victim; they walked up to the supermarket glass-enclosed office, pointed a gun at the assistant manager, announced their intention to rob the man, demanded the money and fled the store on foot. In the second robbery, the offenders arrived in an automobile, conversed with the clerk for several minutes about costume jewelry and shotgun shells, ostensibly purchased a box of shells, paid for them with a $20 bill, prefaced their demand for the return of the $20 bill and the rest of the money in the register with *365 some plaintive comment that sounded like "When you're broke, you're broke.", and escaped by car.
Nor, upon reconsideration, do we find that the evidence of the second robbery was relevant to the identification of the defendant. The crime for which defendant was prosecuted was the armed robbery of the Globe Food Store. Identification by the victim of the robbery and other store personnel was unequivocal. Identification of the defendant by personnel of the 7-11 Store, the site of the second robbery, was in no way probative of the commission of the first offense, the Globe Food Store robbery.
On first hearing, we also noted that admission of evidence of the second armed robbery was permissible because it constituted a necessary predicate to the introduction of the .32 caliber gun. The police had recovered the gun on the day after the 7-11 robbery, about three quarters of a block from where the defendant and his accomplice abandoned their automobile prior to their apprehension. We again acknowledge the relevancy of the recovered gun in this trial in light of the fact that its recovery connected it with the apprehended subjects. The recovered gun fit the description of the weapon used by the offenders who robbed the Globe Food Store and was identified by the victim as being similar. We now hold that the introduction of evidence of the second offense was not a prerequisite to the admission into evidence of the weapon. A sufficient predicate for admission into evidence of the weapon would have been established by testimony of the apprehending officers and those who recovered the gun to the effect that they had reason to pursue and arrest the defendant and to search the area surrounding the abandoned automobile for physical evidence, and that they discovered the gun near the abandoned car. This would have obviated the necessity of admitting into evidence the details of the 7-11 robbery itself.[2]
Under the facts present in the case at bar, we hold that the introduction of evidence of the subsequent armed robbery did not establish a system; nor did it establish defendant's identity as perpetrator of the first robbery. The introduction of the evidence constituted reversible error.
For the aforestated reasons, the defendant's conviction and sentence are reversed and the case is remanded for a new trial.
SANDERS, C. J., dissents for the reasons assigned by the Court on original hearing.
SUMMERS, J., dissents and adheres to the original opinion.
MARCUS, J., dissents for reasons assigned in original opinion.
NOTES
[*] 257 La. 672, 243 So.2d 793 (1971).
[1] See State v. Pearson, 296 So.2d 316 (La. 1974); State v. Ghoram, 290 So.2d 850 (La.1974); State v. Moore, 278 So.2d 781 (La.1973); State v. Prieur, 277 So.2d 126 (La.1973); and State v. Jordan, 276 So.2d 277 (La.1973).
[2] In State v. Grant and Dixon, 295 So.2d 168 (La.1973), dealing with a similar situation, the Court stated:

"* * * Likewise the possession of the machete type knife containing human blood of the type of Benny Gibson was relevant to the issue of identity. However, these items of physical evidence could have been admitted into evidence without describing the details of the attack on Shaffer. It was sufficient for admissibility of these items of physical evidence for the officers to testify that they had reason to arrest the defendants, that when the officers identified themselves the defendants attempted to flee, discarding the various items of physical evidence, that upon apprehending the defendants the watch and machete were seized, and that the physical evidence thus seized was identified by the victim, Benny Gibson, as his property, and that the machete was turned over to the crime lab for analysis. Thus the chain of evidence could have been established without the necessity of admitting details of the attempt to rob George Shaffer. * * *"