340 So.2d 1294 (1976)
STATE of Louisiana
v.
Donald Ray GAINES.
No. 57958.
Supreme Court of Louisiana.
October 6, 1976.
Concurring Opinion January 21, 1977.
Lawrence R. Anderson, Jr., Anderson & Roberts, Baton Rouge, for defendant-appellant.
*1295 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Dist. Atty., Ossie B. Brown, Dist. Atty., Ralph Roy, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
On July 10, 1975 defendant, Donald Ray Gaines, was indicted by the East Baton Rouge Grand Jury for the first degree murder of Rita Decuir, a violation of R.S. 14:30. On December 15, 1975 the trial began and on December 17, 1975 a unanimous jury found the defendant guilty as charged. Motions for a new trial and in arrest of judgment were denied on December 23, 1975 and the trial court on that date sentenced the defendant to death. The defendant appeals relying upon twelve assignments of error. Due our disposition of this case we will only discuss Assignments of Error Nos. 2 and 3.
The defendant was tried as a principal to first degree felony murder for his participation in an armed robbery of the Southside Grocery in Baton Rouge on December 20, 1974 at approximately 1:00 p.m. during which the victim was shot and killed by Steve Perkins. It was established that on that occasion two men dressed in jeans, jean jackets and hats with bandanas over a large portion of their faces entered the Southside Grocery with guns drawn. One man was slightly shorter than the other and the shorter man told the two clerks, Sharon Haynes and Rita Decuir, to lie on the floor. Apparently Ms. Decuir hesitated in getting on the floor and the taller man shot and killed her. The robbers then took about $30.00 and fled on foot.
At defendant's trial Sharon Haynes identified the accused as the shorter man. However, the issue of identity was strongly contested. It was established that the witness had seen the defendant prior to this occasion but that she did not identify him as one of the participants until the following night, some thirty hours later. She could not identify the taller man. (The other man was identified in another case as Steve Perkins and was convicted of this crime). In addition to the weak identification, the defense rested on an alibi.
At the hearing on the State's request to admit evidence of another robbery in which the defendant allegedly participated, the defendant objected on two grounds. Primarily the defense contended that the other crime did not fit within any established exception to the rule prohibiting the introduction of evidence of other crimes. The judge ruled that the evidence would be admissible. When the evidence was sought to be introduced the defendant again objected and, when overruled, properly made this his Assignment of Error No. 2. In addition, in the defendant's Assignment of Error No. 3, the defendant contends it was error to deny his motion for a new trial made on the ground that the admission of this evidence constituted prejudicial error.
The evidence of similar acts consisted of the following:
On December 18, 1974 at approximately 5:30 p.m. two men, one slightly taller than the other, entered the State Cleaners in Baton Rouge (between one and two miles from Southside Grocery). The taller man, identified as Steve Perkins, went up to the proprietor and told him to "give me your money," at which point the taller man pulled out a pistol and attempted to put a bandana to his face. The shorter man, identified as the defendant in this case, did not have a gun nor a bandana and both men were dressed only in "T-shirts" and jeans. The taller man then told the proprietor to get down on the floor after this had allegedly been suggested to the taller man by the defendant. The proprietor was not harmed but the robbers took approximately $80.00 and fled on foot.
In his notice to the defendant the prosecutor indicated that he would introduce evidence of the December 18 armed robbery to prove intent, guilty knowledge, system and identity. R.S. 15:445 provides:
"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it *1296 may be inferred from the circumstances of the transaction."
R.S. 15:446 provides:
"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged."
These statutes and the jurisprudence construing them rest on the proposition that if the sole relevance of other acts is to prove the defendant's criminal disposition, then the evidence is inadmissible character evidence.[1] Although it can be effectively argued that evidence of other offenses is inadmissible because it is irrelevant to any issue in the trial for the crime charged, it can also be argued that this character evidence is relevant to guilt generally, because, having committed this kind of crime before, the defendant is at least capable of the criminal activity charged. Under either analysis, however, the evidence has been uniformly excluded due to the fact that the evidence presents an inordinate risk of prejudice. The prejudice results from various factors, among which are: (1) the strong possibility that the jury will be unduly swayed in its determination of guilt merely because the defendant is a "bad man," (2) the possibility that the evidence may confuse the jury in collateral issues and detract their attention from the main issue of the defendant's guilt for the crime charged, and (3) the danger of unfair surprise.
Therefore, accepting the argument that this evidence is highly relevant, the evidence is nonetheless excluded, not because it fails to tend to prove the defendant's guilt, but because it does it too well and thereby deprives the "bad man" of the fair trial and benefit of the presumption of innocence and the State's burden of proof. However, when the extraneous offense is logically relevant to prove a material issue before the jury and is not merely offered to prove that on this occasion the accused probably acted in conformity with his "criminal disposition," then the evidence should not be excluded merely because it shows that the accused has committed other offenses.
In State v. Moore, 278 So.2d 781, 785 (La.1973), this court established a framework within which to analyze whether an extraneous offense is admissible. We held at the outset that the evidence must be "relevant." This requisite referred not to whether the extraneous offense tended to prove the defendant's criminal disposition and thus his "guilt." Rather, it referred to the question of whether the evidence tended to prove an element of the State's case other than the defendant's character. That is, was the evidence independently relevant as tending to prove knowledge, intent, identity, etc. If in the initial analysis the court determines that the evidence only tended to prove the defendant's bad character, then it was not "relevant" and should be excluded on policy grounds. If, however, the evidence did tend to prove an element of the State's case, then the evidence was "relevant" but was only admissible if the probative value of the evidence on that element outweighed its prejudicial effect. This second factor in the analysis allows the court some measure of discretion in determining, once the extraneous offense is found to have substantial independent relevance, whether it should nonetheless be excluded if it tends to influence the jury's *1297 determination of guilt or innocence due to less rational factors such as emotion.[2]
The State initially indicated four reasons to justify the introduction of the December 18 armed robbery, but in oral argument before this court appeared to admit that the evidence was only relevant on the issue of identity. When the two men entered the Southside Grocery on December 20 both had revolvers drawn, both were masked, the victims were told to lie on the floor, and they fled after taking $30.00. It was clear that the two men intended to rob the clerks in the store; thus, guilty knowledge and intent were not at issue.[3] Likewise, the identification by the proprietor of State Cleaners in no way corroborated Sharon Haynes' identification of the accused as a participant in the case at bar. State v. Hicks, 301 So.2d 357, 365 (La.1974). Thus, identification by the witness to the State Cleaners robbery is not probative of the commission of the Southside Grocery robbery.[4]
Therefore, if the evidence of the December 18 armed robbery was admissible at all, it was admissible under the "system" or modus operandi exception. Of course the "system" exception originally contemplated by R.S. 15:446 is not applicable here in the sense that the term is meant to apply to continuity of two or more activities for the completion of an offense. State v. Hicks, supra. Rather, our jurisprudence allows evidence of other offenses to prove what is called "system" in robbery prosecutions.
All robberies exhibit certain common modes of operation such as the use of force to obtain something of value, often from small business establishments. Although the earlier jurisprudence was quite liberal in the application of the system exception, State v. Prieur, 277 So.2d 126 (La.1973), and other cases[5] have more clearly delineated and limited the scope of "system." The earlier cases appeared to recognize that the relevance of the extraneous offense lies in the inference that because the accused has committed somewhat similar crimes in a general area, it is more likely that he committed the crime at bar. The more recent cases have limited the scope of inquiry into extraneous offenses since it permits the introduction of mere disposition, i.e. character, evidence. Even though this character evidence may be more probative than most due to the close proximity in time, etc., it still only tends to place the defendant's character before the jury and its prejudicial aspects predominate.[6]
Thus, the recent opinions of this court closely analyze the two transactions in order to determine whether they both exhibit such peculiar modes of operation to distinguish them as the work of one person. If this can be shown, then the evidence of the extraneous crime is highly relevant to *1298 identity, because the inference would be strong that the person who committed the other crime was the same person who committed the crime at bar (not because he is a "bad man," nor because of a proclivity toward such conduct, but because it is so unlikely that another person would carry out the crime in such a manner). In such cases the identification of the perpetrator of the extraneous crime is highly probative of the identity of the perpetrator of the crime for which the defendant is on trial and, thus, the evidence does not solely tend to prove the defendant's bad character.
The evidence that the defendant committed the robbery of the State Cleaners on December 18 is simply not probative of the identity of the perpetrator of the Southside Grocery robbery-murder on December 20. To be sure, both robberies exhibited similar characteristics. Both were robberies of a business establishment in the afternoon perpetrated by two men, one slightly shorter than the other, dressed in blue jeans. In both at least one man told the occupants of the establishments to lie on the floor.[7] But these characteristics are common to many robberies. There are also obvious dissimilarities between the modus operandi exhibited by the defendant in the State Cleaners robbery and the perpetrator of the robbery-murder at Southside Grocery. At State Cleaners on December 18 the defendant, unlike the shorter man at Southside Grocery, did not have a gun, was not dressed in a jacket or cap, and did not have a bandana masking his face. The guns were drawn when the men entered Southside Grocery but the one gun used in the State Cleaners robbery was drawn after the two men entered the store and had demanded the proprietor's money. Finally, the State Cleaners robbery did not result in the loss of life. Although the taller man in the December 18 robbery attempted to put a bandana to his fact at one point, this fact does not tie the defendant (identified as the shorter man) to the robbery of Southside Grocery on December 20.
The two robberies do not reflect such similar characteristics that an inference is warranted that the same person committed both. True, the locality, the proximity in time, the number of men and the approximate size and age of the suspects create a suspicion which the police should check. However, these factors only tend to point to the defendant as a likely suspect because it is reasonable to conclude that the defendant's criminal disposition might lead him to commit another robbery; these factors do not tend to show to any degree of certainty that the defendant in fact was the perpetrator of the Southside Grocery robberymurder. Thus the evidence only served to place the defendant's bad character before the jury and its admission constitutes reversible error. State v. Harrison, 291 So.2d 782 (La.1974); State v. Moore, supra.
For the foregoing reasons, the conviction and sentence are reversed and the case is remanded to the trial court for a new trial.
DENNIS, J., concurs. Under the facts here in which the defendant's confederate was not identified as being the same person involved in both robberies, and given the other dissimilarities, the ruling of the majority is correct.
SANDERS, C.J., and SUMMERS, J., dissent.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
In my view, the evidence of this similar act was clearly admissible to show system, knowledge and intent under La.R.S. 15:445 and 446. Moreover, the probative value of the evidence outweighed its prejudicial effect. Accordingly, I respectfully dissent.

ON APPLICATION FOR REHEARING
DENNIS, Justice, concurring in denial of rehearing.
The majority opinion ably discusses the general rule excluding evidence of other *1299 crimes and the exception thereto allowing introduction of such evidence for the purpose of showing that the other crime committed by the accused was so nearly identical in method, or modus operandi, as to earmark both offenses as the handiwork of the accused. The State argues in its application for rehearing that evidence of the other crime was properly admissible here, despite the many dissimilarities pointed out in the original opinion of the Court, because there was evidence that the defendant Gaines committed both the charged offense, the Southside Grocery robbery, and the prior offense, the State Cleaners robbery, with the identical crime partner, Steve Perkins.
I agree that in a proper case the common feature of the same accomplice's presence, considered in combination with other common marks, may invest the evidence of the other crime with sufficient distinctiveness to make it admissible, if its probative value outweighs its prejudicial effect. However, before evidence of a prior crime can be considered eligible for admissibility on this basis it must be established that the accused employed the same confederate in both crimes by clear and convincing evidence. This follows analogously from the clear and convincing evidence rule adopted by most courts which have considered the standard of proof to be required in establishing the other crime. According to McCormick,
"* * * In the first place, it is clear that the other crime, when it is found to be independently relevant and admissible, need not be established beyond a reasonable doubt, either as to its commission or as to defendant's connection therewith, but for the jury to be entitled to consider it there must of course be substantial evidence of these facts, and some courts have used the formula that it must be `clear and convincing.' And it is believed that before the evidence is admitted at all this factor of the substantial or unconvincing quality of the proof should be weighed in the balance.
"Two considerations, one substantive and the other procedural, affect the ease or difficulty of securing admission of proof of other crimes. The first is that the courts are stricter in applying their standards of relevancy when the ultimate purpose of the state is to prove identity, or the doing by the accused of the criminal act charged than they are when the evidence is offered on the ultimate issue of knowledge, intent or other state of mind. The second is that when the crime charged involves the element of knowledge, intent, or the like, the state will often be permitted to show other crimes in rebuttal, after the issue has been sharpened by the defendant's giving evidence of accident or mistake, more readily than it would as part of its case in chief at a time when the court may be in doubt that any real dispute will appear in the issue." (Footnotes omitted.) McCormick on Evidence, § 190, pp. 451, 452 (2d ed. 1972).
The evidence in the instant case that Steve Perkins was an accomplice of Gaines in committing the Southside Grocery robbery was not clear and convincing. The eyewitness was not able to identify the accomplice. Essentially, the evidence which indicated Perkins could have been the accomplice consisted of two pre-trial custodial statements which prosecution witnesses said were made by Gaines, one in which he stated Perkins committed the crime with him, and another in which he denied his own complicity but accused Perkins of having confessed to the crime at a party. At trial, Gaines took the stand and denied that any of these facts were true, and altogether denied having made one of the statements. Thus the connection of Steve Perkins to the Southside Grocery robbery depends upon the statements of Gaines, who proved to be a patently unreliable witness.
In view of the poor quality of the evidence linking Perkins to the charged crime as the defendant's accomplice, the State did not establish by clear and convincing evidence that the other crime committed by the accused was so nearly identical in method, i.e., that in both crimes the accuse employed the identical crime partner under closely similar circumstances, as to earmark both offenses as the handiwork of the accused. *1300 Therefore, evidence of the other crime did not fit within an exception to the rule excluding evidence of prior offenses and should have been excluded. For cases presenting modus operandi evidence of a more convincing nature involving use of the same accomplice see State v. Lee, ___ So.2d ___ (La.1976); People v. Haston, 69 Cal.2d 233, 70 Cal.Rptr. 419, 444 P.2d 91 (1968). See generally, 2 Wigmore on Evidence, § 411 (3d ed. 1940); McCormick on Evidence, § 190, p. 449 (2d ed. 1972).
I respectfully concur in denying the application for a rehearing.
NOTES
[1] "Clearly, evidence which only tends to show the bad character of the accused is inadmissible, except in rebuttal when the accused has introduced evidence to show his good character. R.S. 15:481. Even for impeachment purposes, our statutes limit evidence of other crimes to former convictions. No prior arrest, indictment or prosecution is admissible. R.S. 15:495. And when, in general, credibility is attacked, the inquiry cannot go into `particular acts, vices or courses of conduct.' R.S. 15:491." State v. Moore, 278 So.2d 781, 787 (La. 1973).
[2] McCormick stated that the process is one of "balancing, on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmastering hostility." C. McCormick, Evidence § 190 at 453 (Cleary ed. 1972).
[3] State v. Hicks, 301 So.2d 357, 364 (La.1974); State v. Harrison, 291 So.2d 782, 784 (La.1974); State v. Prieur, 277 So.2d 126, 129 (La. 1973). Although specific intent to kill or inflict great bodily harm was an "essential part of the inquiry," the evidence of the defendant's participation in the December 18 armed robbery is not probative of this intent.
[4] This case is thus distinguishable from State v. Banks, 307 So.2d 594 (La. 1975), wherein the defendant contended that the witness who identified him as the perpetrator in the case at bar made a mistake. Thus, in order to refute this allegation and to corroborate the witness' identification, it was relevant to elicit evidence of an identical transaction, so close in time to the first, in which the same witness had identified the accused.
[5] E.g. State v. Vince, 305 So.2d 916 (La.1974); State v. Hicks, 301 So.2d 357 (La.1974); State v. Harrison, 291 So.2d 782 (La.1974); cf. State v. Moore, 278 So.2d 781 (La.1973).
[6] See discussion above.
[7] "The fact that the offenders were black in each case has no bearing on similar modus operandi." State v. Hicks, 301 So.2d 357, 364 (La.1974).