354 So.2d 1007 (1978)
STATE of Louisiana, Appellee,
v.
John G. FRENTZ, Appellant.
No. 60089.
Supreme Court of Louisiana.
January 30, 1978.
*1008 F. Irvin Dymond, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant Frentz was convicted of aggravated crime against nature with a person under seventeen years of age. La. R.S. 14:89.1(5). He was sentenced to ten years' imprisonment.
On the defendant's appeal, we find that the conviction must be reversed: prejudicial evidence was improperly admitted as to (1) unnatural sexual acts committed with other persons than those with the person specified by the bill of information (Assignment 4); and as to (2) the defendant's alleged reputation as a homosexual (Assignment 14).
1. Other-crime Evidence.
The defendant is charged with unnatural oral sexual relations with David D., a 15-year-old boy, during June of 1974. Over defense objection, the state introduced testimony by Ronald S. and John S., then sixteen, that the accused had committed similar sex acts with them at the same place and during approximately the same period.
Pursuant to pre-trial Prieur notice, the state sought to justify introduction of evidence as to these similar acts for the purpose of showing "system" in aid of proof of guilty knowledge and intent. La.R.S. 15:445, 446. As the defendant correctly contends, however, the trial court erred in admitting them for such purpose.
The victim (David D.) testified that the defendant, his teacher, had committed unnatural oral sex acts upon his person at the teacher's home. Two young boys testified on behalf of the state that they witnessed at least one of these acts. The defendant, admitting that David D. had come to his house (to do some housecleaning, he testified), denied the acts, and claimed that the opposing testimony arose from disciplinary or other differences between the witnesses and himself.
*1009 The offense of crime against nature is committed by unnatural carnal copulation through use of the genital organ of one of the participants. La.R.S. 14:89, 89.1. Proof of the act itself is proof both of the crime and of the general criminal intent, La.R.S. 14:10(2), alone required. Perkins on Criminal Law 389-92 (2d ed., 1969); Clark and Marshall, Treatise on the Law of Crimes, Section 11.07 (7th ed., 1967).
Evidence of other crimes, therefore, is not admissible to prove criminal intent. State v. Williams, 352 So.2d 1295 (La.1977); State v. Clark, 338 So.2d 690 (La.1976); State v. Moore, 278 So.2d 781 (La.1973). Nor does this case present facts where the accused admits the act but asserts some innocent explanation for it; so that, therefore, his guilty knowledge presents an issue, as to which other-crime evidence may become admissible. State v. Frederick, 340 So.2d 1353 (La.1976).
On appeal, the state contends that, at the least, the evidence of the other acts was admissible to prove "system." However, system was not relevant to prove any fact of consequence actually at issue herein (e. g., identity). Where system is not relevant for such purpose, the state is not permitted to prove other crimes in the guise of proving "system"for the sole purpose of such evidence is, then, a prohibited one of inferring the defendant's guilt of the present crime (for which alone he is on trial) simply because he is a bad man who had committed similar crimes in the past. State v. Jackson, 352 So.2d 195 (La.1977).
As we stated in State v. Ledet, 345 So.2d 474, 479 (La.1977): "* * * proof of system simply is not relevant in a case such as this one where there is absolutely no question that the accused was the person involved in both incidents. The entire point of the state's establishing that a `system' existed is to show that because of the unique aspects of an extraneous crime committed by the accused that he must have been the perpetrator of the crime at issue because it, too, was marked by the same distinctive hallmarks. However, when there is no contest at all over the participation of the accused in the alleged incident, but the only question is whether any crime at all took place, evidence of extraneous offenses serves only to establish that defendant is capable of and thus likely to have committed the crime in question, and as such the evidence is inadmissible."
2. Improper Proof of "Reputation"
Assignment 14 involves the introduction of improper evidence concerning the accused's alleged reputation as a homosexual. Before discussing this assignment's particulars, we deem it advisable to summarize some general rules governing introduction of evidence as to character or reputation of an accused or of a witness.
Testimony as to "character" (reputation) may be admissible for two distinct purposes, with differing rules and reasons:
(1) The credibility of a witness may be attacked "by showing that his general reputation for truth or for moral character is bad." La.R.S. 15:490. In that event, "the inquiry must be limited to general reputation, and can not go into particular acts, vices or courses of conduct." La.R.S. 15:491. If the accused takes the stand, he places his credibility at issue, and his credibility may then be attacked in the same manner, with the same limitations, as in the case of any other witness. La.R.S. 15:462, 486. The inquiry is, in this case, limited to general reputation for truth and character with regard to veracity; and the defendant may not advance affirmative proof of this character unless the state has, by cross-examination or otherwise, placed his reputation for credibility at issue.
See: State v. Muse, 319 So.2d 920 (La. 1975), discussed at 37 La.L.Rev. 589-90 (1970); McCormick on Evidence, Section 44 (2d ed. 1972); cf., Pugh, Louisiana Evidence Law 22-23 (1974).
(2) The accused may also introduce evidence of his character to show he is not the type of person who would commit the particular crime charged; until he does so, his character (reputation) is not at issue; but, if he does so, the state may introduce rebutting *1010 reputation testimony only as to the aspects of reputation put at issue by the accused. La.R.S. 15:479, 480. The character evidence is limited to "the general reputation that a man has among his neighbors, not upon what particular persons think of him." La.R.S. 15:479. The accused's introduction of evidence for such purpose "must be restricted to showing character as to such moral qualities as have pertinence to the crime with which he is charged." La. R.S. 15:480.
See: State v. Kelly, 237 La. 991, 112 So.2d 687 (1959); Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948) (leading case); Pugh, Louisiana Evidence Law 22-23 (1974); McCormick on Evidence, Section 191 (2d ed., 1972).
In the present instance, the defense introduced character witnesses as to the accused's reputation for "truthfulness, veracity, morality and character." Although couched in the terms common to credibility reputation (see 1 above, also State v. Kelly, therewith cited), both defense and state assumed the testimony had to do with moral qualities pertinent to the particular crime charged (see 2 above). If so, the state was entitled to introduce rebuttal evidence and to conduct cross-examination as to the accused's reputation for homosexual inclinations and activities.
Accordingly, the state on rebuttal offered the testimony of Officer Latapie for the purpose of testifying to the accused's reputation in the community, to the extent he was aware of it. The defendant offered both a general objection to any police officers testifying (since they were not members of the community), Tr. 267, and also a specific objection that this particular police officer could not summarize the testimony of the only person in the academic community he had spoken to concerning that one person's view of the accused's reputation in such community, Tr. 271-72.[1]
The officer was then permitted to testify as to his (unnamed) academic informant's impression "that it was the general consensus of the teachers at Colton [the school the accused taught at], if you want me to use slang expressions, that the defendant was `fruit' [i. e., homosexual]. How he never got caught, he didn't know. He said he did it in the open, or what appeared to be in the open."
The police witness did not know how long his teacher-informant had been at Colton. Upon state objection that the name of the informant was irrelevant, the defense was not even permitted to ascertain the informant's identity.
The ruling admitting the police officer's testimony was clearly erroneous. The teacher-informant's testimony as to the accused's homosexual reputation may have been admissible under accepted theory, even though such opinion was based on hearsay. Nevertheless, for the reasons noted below, the police officer's hearsay testimony of the informant's reputation-opinion was inadmissible. It should have been excluded upon the accused's objection.
The reasons for admissibility of reputation evidence based solely upon "opinion-based-on-hearsay testimony" are complex and historical. See Michelson v. United States, cited above, at 335 U.S. 477-78, 69 S.Ct. 213, 219. For these historical reasons, the hearsay-based testimony by the reputation witness himself is "allowed to summarize what he has heard in the community, although much of it may have been said by persons less qualified to judge than himself. The evidence which the law permits is not as to the personality of defendant but only as to the shadow his daily life has cast in his neighborhood.
"This has been well described in a different connection as `the slow growth of months and years, the resultant picture of forgotten incidents, passing events, habitual and daily conduct, presumably honest because disinterested, and safer to be trusted because prone to suspect. * * * It is for *1011 that reason that such general repute is permitted to be proven. It sums up a multitude of trivial details. It compacts into the brief phrase of a verdict the teaching of many incidents and the conduct of years. It is the average intelligence drawing its conclusion.'"
However, as this decision notes (in accordance with all reported authority), the reputation-witness himself "must qualify to give an opinion by showing such acquaintance with the defendant, the community in which he has lived and the circles in which he has moved, as to speak with authority of the terms in which generally he is regarded." 335 U.S. 478, 69 S.Ct. 219.[2] See also 2 Marr, Criminal Jurisprudence of Louisiana, Section 646 (1923).
Reputation (character) testimony is the opinion (formed on hearsay it is true) by a member of the community exposed over an extended period of time to hearing the discussion (or lack of it) by other members of the community shared by himself and the person whose reputation is at issue.
Before being permitted to testify, the reputation-witness must be shown to be qualified to testify on the subject as a member of the community in a position to speak with authority on the subject. After testifying, the credibility of this reputation-witness is subject to attack, as is that of any other witness, as to bias or interest, La.R.S. 15:492, reputation for credibility, La.R.S. 15:491, or prior contradictory statements, La.R.S. 15:493, 497, and insofar as he may have been convicted of a crime, La.R.S. 15:495, for examples.
Here, however, a police officer testified as to what an anonymous member of the community had informed him was the accused's community reputation. The police officer himself was not testifying from personal knowledge as a member of the community, and the reputation evidence was inadmissible for this reason.
Perhaps a more important reason for its inadmissibility is that the defendant was deprived of his right to contest the qualifications or credibility of the community-member informant, whose opinion as to the accused's alleged community reputation was asserted by the police officer who alone testified. Hearsay evidence as to the reputation-opinion-testimony *1012 of others is inadmissible. State v. Chapman, 251 La. 1089, 208 So.2d 686 (1968) (where the trial court ex proprio motu refused to receive such evidence when offered by the defendant, even without state objection, and this court affirmed).

Decree
For the reasons assigned, therefore, we reverse the conviction and sentence, and we remand this case for a new trial in accordance with law.
REVERSED AND REMANDED.
DENNIS, J., concurs and assigns reasons.
SANDERS, C. J., dissents with written reasons.
SUMMERS and MARCUS, JJ., dissent.
DENNIS, Justice, concurring.
I agree that the other crimes evidence was inadmissible to prove that a crime occurred in this case. Moreover, I think the State is mistaken in attempting to classify it as evidence of a "system." Instead, it appears to be more in the nature of "signature" crime evidence. The distinction is important because evidence of "system" can be admissible to show the doing of the criminal act, as well as the identity of the actor, and his intention, where any of these is in dispute. McCormick, Law of Evidence, p. 328 (1954).
I fully agree with the majority opinion's discussion of improper proof of "reputation."
SANDERS, Chief Justice (dissenting).
John G. Frentz was charged with an aggravated crime against nature with a person under the age of seventeen years. LSA-R.S. 14:89.1(5). After a jury trial, defendant was found guilty as charged. The trial judge sentenced him to ten years imprisonment. The majority reverses the conviction, holding that evidence of other crimes of the same nature was erroneously admitted. I disagree.
The pertinent assignment of error is number four. In brief, defendant argues that this assignment was reserved to the ruling which allowed the State to introduce evidence of other similar offenses as proof of defendant's intent to commit the crime charged.
Defendant's allegation is erroneous. The State gave notice that it intended to introduce evidence of other similar offenses, and the trial court ruled that the State could introduce this evidence to show system on the part of the accused under LSA-R.S. 15:445 and 15:446.
The evidence consisted of the testimony of two young men who testified that they each had had unnatural sexual relations with the defendant about the same time, at the same place, and under similar conditions as did the victim. Each of the young men also testified that he had seen the defendant have unnatural sexual relations with the male juvenile victim in the present case.
One of the juveniles testified that he was sixteen in June of 1974 and that he was a classmate of the victim at the school where defendant was an assistant principal. He testified that he had been to the defendant's home on several occasions before and after school, and that he had been in defendant's home when the victim was present. He further testified that on one occasion he had seen the defendant and the victim performing sexual acts together. He testified that he had also engaged in similar sexual activity with the defendant, and that like the victim, was asked to defendant's home to do some repair work and was seduced in the same manner as the victim.
Likewise, the other juvenile testified that he had lived in the defendant's home for about a year; that he knew the victim and the other juvenile to be students at the school at which defendant worked; that he had observed sexual activity between the defendant and victim; and that he, himself, had engaged in such activity with the defendant. The testimony of the three youthful victims was closely interwoven.
*1013 I agree with the trial court's ruling that the testimony was admissible to show the system used by defendant to seduce the young students. In State v. Prieur, La., 277 So.2d 126 (1973), we held that other acts by the accused which are of a like nature as the crime charged, and which exhibit like methods, plans of operation, or the same modus operandi, are admissible to show system. See also State v. Spencer, 257 La. 672, 243 So.2d 793 (1971); State v. Montegut, 257 La. 665, 243 So.2d 791 (1971).
Here, two of the juvenilesone of which is the victimwere students at the school at which defendant was assistant principal. During the spring and summer of 1974, both boys were asked by defendant to come to his home after school to do repair work, and both were then seduced by defendant in the same manner. The third juvenile was present in the house, identified the students who visited there, and otherwise corroborated their testimony.
In State v. Jackson, La., 352 So.2d 195, 196 (1977), the Court stated:
"This court has held to be admissible, for limited purposes, proof of other crimes exhibiting almost the identical modus operandi or system, committed in close proximity in time and place. State v. Jones, 332 So.2d 466 (La.1976) (a pre-Prieur trial); State v. Price, 325 So.2d 780 (La.1976); State v. Vince, 305 So.2d 916 (La.1974); State v. Lawrence, 294 So.2d 476 (La.1974).
"As the jurisprudence has clarified, the other crime must be distinctively similar in system, State v. Slayton, 338 So.2d 694 (La.1976), State v. Waddles, 336 So.2d 810 (La.1976), State v. Hicks, 301 So.2d 357 (La.1974)i. e., `so peculiarly distinctive that one must logically say that they [the two crimes] are the work of the same person,' State v. Lee, 340 So.2d 1339,1345 (concurring opinion of Mr. Justice Dennis) (La.1976). Furthermore, the proof of the other crime as part of the system must be relevant to prove a fact of consequence to the accused's present innocence or guilt (independent of the inadmissible purpose to infer that the accused committed the present crime because he had committed the other one). State v. Ledet, 345 So.2d 474 (La.1977); State v. Frederick, 340 So.2d 1353 (La.1976); State v. Gaines, 340 So.2d 1294 (La.1977); State v. Hicks, 301 So.2d 357 (La.1974); State v. Harrison, 291 So.2d 782 (La. 1974).
"Of course, as the cited decisions emphasize, not only must the other-crime evidence first be found relevant to a material fact actually at issue, but the probative value must outweigh its prejudicial effect. See State v. Ledet, 345 So.2d 474 (La.1977). In emphasizing the limited purposes for which other-crime evidence may be used, and the limitations upon its use even for such purposes, Ledet summarizes the governing values in the exercise of the trial judge's limited discretion to admit it, 345 So.2d 478:
` * * * Because of the substantial risk that the extraneous evidence may detract from the constitutional right to be presumed innocent until proven guilty beyond a reasonable doubt of the crime charged, other crimes can only be admitted after a "showing by the State that the evidence of other crimes is not merely repetitive and cumulative, is not a subterfuge for depicting the defendant's bad behavior, and that it serves the actual purpose for which offered."'"
Under the principles stated, the trial judge properly admitted the testimony. The weight of authority throughout the country supports an affirmance of the conviction. State v. Alford, 206 La. 100, 18 So.2d 666 (1944); People v. Davis, 46 Mich. App. 80, 207 N.W.2d 419 (1973); Andrews v. State, 172 So.2d 505 (Fla.App., 1965); State v. Harmon, 107 Ohio App. 268, 158 N.E.2d 406 (1958); State v. Gellerman, 42 Wash.2d 742, 259 P.2d 371 (1953); Annotation, 77 A.L.R.2d 841 (1961 and Later Case Service 1975); 22A C.J.S. Criminal Law § 691(39), p. 897; 70 Am.Jur.2d, Sodomy, § 21, p. 823.
For the reasons assigned, I respectfully dissent.
NOTES
[1] Although the state contends otherwise, we think in context that the accused sufficiently stated the grounds for his objection, albeit somewhat inarticulately, so as to preserve for appellate review the error complained of.
[2] The decision continues, 335 U.S. 478, 69 S.Ct. 219-20: "To require affirmative knowledge of the reputation may seem inconsistent with the latitude given to the witness to testify when all he can say of the reputation is that he has `heard nothing against the defendant.' This is permitted upon assumption that, if no ill is reported of one, his reputation must be good. But this answer is accepted only from a witness whose knowledge of defendant's habitat and surroundings is intimate enough so that his failure to hear of any relevant ill repute is an assurance that no ugly rumors were about."

An earlier ruling in the present case (Assignment 7) in violation of this principle enhanced the prejudice caused by the present erroneous admission (Assignment 14) of the anonymous informant's view. The latter was not established as based on membership in the Colton academic community for any length of time, but was nevertheless permitted to assert (through the police officer) the accused's homosexual reputation. An assistant principal of the school (who had worked with the accused for an extended period of time) was not permitted earlier to testify as a character witness because he had never heard the accused's reputation discussed. Tr. 140-41 (Assignment 7). As stated in State v. Emory, 151 La. 152, 153, 91 So. 659, 660 (1922), in requiring an instruction to such effect: "The best evidence of good reputation is where the witness testifies that he has never heard it discussed, questioned, or talked about. The more unsullied and exalted the character is, the less likely is it ever to be called into question."
This is the view of virtually all courts and of all textwriters. 5 Wigmore on Evidence, Section 1614 (Chadbourn rev., 1974), citing (in addition to those from England and the United States) the Louisiana decisions of Emory, State v. Ciaccio, 163 La. 563, 112 So. 486 (1927) and State v. Pace, 183 La. 838, 165 So. 6 (1936). See also: Pugh, Louisiana Evidence Law 24-27 (1974) and 2 Marr, Criminal Jurisprudence of Louisiana, Section 646 (1923).
The state's objection to reputation evidence of this character was apparently founded upon erroneous expressions to the contrary in State v. Howard, 230 La. 327, 88 So.2d 387 (1956), by way of dicta. As a matter of fact, the better view expressed by all textwriters is that the reputation-witness should not only be permitted to testify that he had never heard the accused's reputation discussed, but also his own opinion that therefore, in his opinion, the accused's community reputation was good.