DECREE
Appellant Gene Piazza was convicted of five counts of indecent behavior with juveniles and sentenced to four years at hard labor on each count, a total of 20 years, to run consecutively. His appeal to this Court was heard by Judges Thomas J. Kliebert, Fred S. Bowes and H. Charles Gaudin.
For reasons expressed in the following opinions, Piazza’s convictions are affirmed, with Judge Bowes dissenting. His sentences are vacated and set aside and this matter remanded for resentencing, with Judge Gaudin dissenting.
Accordingly,
IT IS ORDERED that Gene Piazza’s convictions be and they are hereby affirmed.
IT IS FURTHER ORDERED that Gene Piazza’s sentences be and they are hereby vacated and set aside, and that this matter be and it is hereby remanded to the 29th Judicial District Court for resentencing in accord with the views expressed hereinafter by Judges Kliebert and Bowes.
GAUDIN, Judge.
Gene Piazza, convicted in the 29th Judicial District Court of five counts of indecent behavior with juveniles and sentenced to a total of 20 years at hard labor, has assigned five errors in his appeal to this Court:
(1) The prosecution failed to provide adequate answers to his Bill of Particulars, thereby depriving him of a fair trial;
(2) He was prejudiced by a duplicitous indictment;
(3) The trial judge erred in not granting a continuance;
(4) The trial judge failed to follow sentencing guidelines; and
(5) The sentence is excessive.
Piazza was convicted of five violations of LSA-R.S. 14:81, which is as follows:
“Indecent behavior with juveniles is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person. Lack of knowledge of the child’s age shall not be a defense.”
The victims in this case, young girls aged 10, nine, eight, seven and six, respectively, testified that Piazza was a friendly neighborhood man who fixed bicycles, rode them around in his truck and gave them piggyback rides. They also said he would put his hands in their pants and wiggle his fingers between their legs. The six-year-' old victim said Piazza undressed her and checked her like a doctor.
While Piazza fondled the young girls and at times exposed his person to them, they said, he did not try to engage in sexual intercourse with any of the victims nor did he have any of them touch him.
Appellant is not contesting the sufficiency of the evidence, relying instead on the heretofore itemized assignments of error; consequently, there is no need to dwell further on the testimony of the young girls.
In any event, I have carefully considered the assignments of error and find none with enough merit to warrant a reversal. I would therefore affirm Piazza’s conviction.
*1320 Following Piazza’s trial and a presen-tence investigation, the district judge announced that he was sentencing appellant to four years on each of five counts, to be served consecutively.
ASSIGNMENT NO. 1
In this assignment of error, Piazza complains because the State did not provide him with the precise month, week, day, time and place of each alleged offense.
Prior to trial, appellant filed a Bill of Particulars which provided:
“(1) With regard to the charge contained in Count One of the indictment, please state or describe the particular act committed by defendant which the State contends was ‘the lewd and lascivious crime of Indecent Behavior.’
“(2) With regard to the charge contained in Count One of the indictment, please give the date or approximate date of the alleged offense.”
In response, the State said:
“(1) The defendant would place his hand under the clothing of the victim and ‘touch her in the genital area. Also, the defendant would expose his penis to the victim.
“(2) The indictment sets forth the period of time in which this offense took place. Although the defendant is charged with only one count of R.S. 14:81 with each victim, the evidence will show that the above stated ‘lewd and lascivious’ conduct was performed by the defendant a number of times during this period with each victim. However, since each victim is between the ages of 5 to 10 years old it is impossible for them to recall the dates and times of each violation. The indictment sets forth the time period of these offenses to the best of the State’s knowledge and belief. See State v. Cramer, 358 So.2d 1277 (1978); State v. Case, 357 So.2d 498 (1978); and State v. McCoy 337 So.2d 192 (1976).”
Piazza’s counsel announced that he was satisfied with these answers. Shortly thereafter, however, appellant retained a new lawyer who filed a second Bill of Particulars. At a hearing on June 6, 1984, the prosecutor reiterated his previously given answers and said further that the majority of the acts had taken place in the vacant house adjacent to Piazza’s home, and that some had taken place in appellant’s house.
The matter was submitted and the trial judge issued these written reasons:
“This Court, in error, reset Motions for a Bill of Particulars which were argued earlier on January 25, 1984, and during said hearing the State answered the application and counsel was satisfied with the State’s replies.
“The Defendant through Motions filed by his third defense lawyer, attempts to reopen this aspect of the case asking the State to further expand on an already satisfied requirement of Art. 484 of the Code of Criminal Procedure. As a precaution, the Court allowed Defendant to further argue the subject of specific dates of the crimes of LSA R.S. 14:81, and in the opinion of the Court, further particulars by the State are not required under law.
“The Louisiana Supreme Court in State v. Case (357 So.2d 498) held that where a defendant was charged with continuing illegal sexual relationship with a victim under the age of 17, which had continued over a period of three years, specific dates on which lascivious conduct allegedly occurred are not required. In the instant case, the State has narrowed the crime to a period of some three months, in only two locations; thus, the reply herein is far more specific than in the Case matter and, in my opinion, lacks merit and is therefore dismissed.
“The Court is further influenced by the fact that all of the victims in this matter range in age from five to ten years old; thus, it is impractical to expect such victims of tender age to recall exact hours and dates.”
Considering Case, I find, as did the trial judge, that Piazza was informed of the charges against him with sufficient particularity so that he could prepare his defense. Piazza was given, in the indictment, each victim’s name and age and the proscribed *1321 conduct he had been involved in with each of the young girls. The State gave appellant all the information available regarding the dates and places the offenses supposedly took place.
In State v. Cramer, cited in the State’s answer to Bill of Particulars paragraph (2), defendant was an assistant boy scout master and he was charged with having unnatural sexual acts with seven young boys. The Supreme Court of Louisiana stated:
“Although the bill of information did not give the exact dates of any offenses, it set forth periods of times during which the offenses occurred, e.g., October 19, 1973 through April 5, 1974, December 1975, April 1976. The defense filed a motion for bill of particulars requesting the precise dates of the offenses. In response, the State reiterated dates already given in the bill of information and stated that it did not have more definite dates. Thereafter, the defense filed a supplemental motion for bill of particulars asking which offenses grew out of the same transaction. The State answered, grouping those offenses which occurred ‘on the same day at approximately the same time.’ The judge found the State’s answers to both motions ‘good and sufficient in law.’ ”
“Testimony and evidence at trial narrowed some of the periods of time during which the offenses occurred. However, during trial, the State amended the bill of information and the answers to the bill of particulars to reflect the evidence at trial. Thus, count eight, which the State had alleged occurred in April, 1975, was amended to state that it occurred between April and June of 1975.
“Louisiana Code of Criminal Procedure Article 468 provides that the ‘date or time of the commission of the offense need not be alleged in the indictment, unless the date or time is essential to the offense.’ The State charged the defendant with unnatural carnal copulation when the victim was under the age of seventeen and the defendant is at least three years older than the victim.
“The bill of information contained each victim’s age at the time of the offense and stated that the defendant was three years older than the victims. The State provided the defense with the birth dates of each victim in the answer to the bill of particulars. Therefore, the defense had the essential information as to the ages of the victims. See State v. Hunt, La., 310 So.2d 563 (1975).
“The victims in the instant case were unable to recall the dates. The State did not withhold them and introduce them at trial to the defendant’s surprise. Rather, the State supplied the defense with all the available information concerning the dates.
“We conclude that the defendant possessed enough data to identify each criminal offense and defend against it.”
This assignment of error by Piazza is without substance.
ASSIGNMENT NO. 2
Appellant says he was prejudiced by a duplicitious indictment and he cites State v. Procter, 354 So.2d 488 (La.1977):
“Some of the dangers inherent in a multiple offense joinder situation are that the jury may become confused in trying to apply the applicable law and evidence to the correct offense; that the jury may consider that a person charged with doing so many things is a bad man who must have done something, a feeling that might lead to a cumulation of the evidence; that the judge might find it difficult to adequately charge a jury as to the law with respect to each offense; that the prosecutor may find it troublesome to present his evidence in a compartmentalized and understandable manner; and that a defendant may be confounded or embarrassed in his defense because of the sheer number or complexity of the charges against him.”
On the very day Procter was rendered, the Supreme Court of Louisiana also handed down State v. Holstead, 354 So.2d 493 (La.1977), which dealt with a situation more similar to Piazza’s than Procter. The defendant in Holstead was accused of il *1322 legal sexual conduct and moved to sever the offenses.
The Court said:
“In the case now before us, defendant Holstead was charged with committing on separate occasions lewd and lascivious acts with seven young girls. The evidence in the case consisted primarily of the testimony of the seven victims who each described a number of occurrences which were simple, clear and largely identical in nature. The offense proscribed by R.S. 14:81 and with which defendant was charged is a fairly simple one which has only a few elements. See State v. Edwards, 283 So.2d 231 (La.1973). And since all charges were for a violation of the same statute, there should have been no confusion in the application of the law to the various incidents. Under these circumstances and irrespective of the fact that seven offenses might normally be viewed as too large a number for one trial, we find that the simplicity of the violations and non-complex nature of the evidence rendered the case appropriate for trial in a joined situation. We therefore find in this case that the trier of fact could compartmentalize the evidence and apply the law intelligently as to each offense, and that defendant was not unfairly convicted on the basis of prejudice or confusion instead of on the evidence of his crimes ...
“Revised Statute 15:445 tells us that evidence is admissible of similar acts independent of the act charged as a crime in the indictment in order to show intent. And Revised Statute 15:446 says that when intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent. In this case intent indeed forms an essential part of the inquiry, for defendant is charged with R.S. 14:81 which proscribes doing a lewd or lascivious act upon the person or in the presence of any child under the age of seventeen with the intention of arousing or gratifying the sexual desires of either person. One cannot be found guilty of violating this statute unless he has formed the requisite specific intent. Since intent is subject of inquiry in the case, similar acts throwing light on that intent are admissible. R.S. 15:445, 446. State v. Ledet, 345 So.2d 474 (La.1977); State v. Frederick, 340 So.2d 1353 (La. 1976); State v. Hicks, 301 So.2d 357 (La.1974).
“In the case at bar, defendant Hol-stead was accused of committing lewd and lascivious conduct with and in the presence of seven young girls, all of whom were about twelve years old.
“The respective incidents with each of the children, or one or more such incidents, however seemingly sexually oriented, might nonetheless have been viewed by the fact-finder, constrained to acquit absent proof beyond a reasonable doubt, as not fully purposeful or clearly designed to arouse or gratify sexual desires. It was therefore advisable and proper for the state to introduce other similar incidents to strengthen the state’s effort to prove that defendant’s conduct was with the required specific criminal intent. As we have already related, the Code of Criminal Procedure specifically allows the admission of similar acts in order to show intent. R.S. 15:445. We therefore find that the similar acts in question were relevant to the issue of intent on each of the other crimes. We further find that the prejudicial effect of the evidence of the extraneous crimes in a severed situation would not have outweighed their probative value as to any of the other crimes and likewise would not in the joined trial.”
For the reasons set forth in Holstead, which I find more appropriate than Procter, this assignment of error is without merit.
ASSIGNMENT NO. 3
Piazza states, in this assignment of error, that his motion to continue the trial should have been granted and that he was prejudiced by the trial judge's denial.
This case was originally set for July 16, 1984, but postponed because Piazza had been hospitalized that morning due to chest *1323 pains. Trial was reset for July 23rd and again appellant moved for a continuance, asking that the proceeding be delayed until Piazza became “... physically able to withstand the stress and anxiety ...” The motion to continue did not say that Piazza’s health would be endangered or that his illness had prevented him from preparing a defense, and I cannot say that the trial judge abused his wide discretion in denying the motion. See State v. Karno, 342 So.2d 219 (La.1977), wherein the Supreme Court of Louisiana pointed out that:
“... the granting or refusing of a motion for continuance rests in the sound discretion of the trial judge and that his ruling will not be disturbed on appeal absent a showing of abuse of discretion.”
During Piazza’s trial, there is no indication in the record that he was sick or in distress or that he was unable to take an active part in his defense.
ASSIGNMENT NO. 4
AND
ASSIGNMENT NO. 5
These assignments of error are joined as they are intrinsically related. Before passing sentence, this colloquy took place between the trial judge and Piazza’s attorney:
THE COURT:
“Mr. Landry, the Court has received and taken into consideration, in conjunction with the pre-sentencing investigation, high letters of praise from Dr. Joseph Sperazza and Mr. Charles Thompson, Mrs. Piazza, and Gina Golemi, the daughter of the Defendant, and an exhaustive report from the Department of Corrections, from Mrs. Gwendolyn Duet, and a letter of several pages which I asked the Defendant, himself, to submit to the Court. And, finally, a particularly moving letter from Mr. Clark Kerr, former Governor of the State of Florida, and the Defendant’s military record. And pursuant to my promise at the time of the jury deliberation, the Court is ready to pass sentence, unless you have anything further.”
MR. LANDRY:
“Your Honor, with reference to the military letters that you received, we would like to present for the Court’s review a certificate from the U.S. Marine Corps. It has not been submitted previously and we would like the Court to take notice to it.”
THE COURT:
“The Court will take notice of it. I will put it in the record. Col. Piazza made reference to several Honorable Discharges in his letter.
“Following the Jury’s finding of guilty to five (5) counts of violation of R.S. 14:81, the Court now imposes the following sentence, the Defendant to receive credit for time served since the time of his arrest.
“For the violation with respect to (name omitted)[1] it is the sentence of the Court that the Defendant will serve four (4) years at hard labor with the State Department of Corrections, State of Louisiana, and likewise with respect to violation In Re: (name omitted), the Defendant will serve four (4) years at hard labor with the Department of Corrections, to be served consectively; and also to be served consectively four (4) years at hard labor with violation with respect to (name omitted); and likewise four (4) years at hard labor with respect to the violation In Re: (name omitted). In other words, the Defendant is sentenced to twenty (20) years at hard labor with the State Department of Corrections, State of Louisiana.”
The trial judge may not have fully complied with LSA-C.Cr.P. art. 894.1, which requires the sentencing judge to consider and comment on various enumerated factors. A defendant is sometimes entitled to such an articulation. See State v. Robicheaux, 412 So.2d 1313 (La.1982).
However, jurisprudence has consistently held that a failure to strictly adhere to the guidelines of Art. 894.1 does not automatically render a sentence invalid and justify a remand. See State v. Davis, 448 So.2d 645 (La.1984), State v. Wimberly, 414 So.2d 666 *1324 (La.1982), and State v. Smith, 452 So.2d 251 (La.App. 5th Cir.1984).
From Wimberly:
“In those cases in which we have vacated the sentence and remanded the case for resentencing in full, recorded compliance with Article 894.1, our action was not prompted simply by the sentencing judge’s failure to give his reasons for the penalty imposed. Rather, it was because, based on the inadequate record presented to us, there appeared to be a substantial possibility that the defendant’s compliants of an excessive sentence had merit. In each case, pursuant to our duty to uphold the constitution, which expressly prohibits the imposition by law of excessive punishment, we vacated the sentence and remanded the case for re-sentencing on an adequate record, including strict compliance with Article 894.1.”
The function of the reviewing court is not to send a case back to the district court merely for a perfunctory compliance with Art. 894.1. The reviewing court should determine from the record, if it can, whether the sentence was constitutionally excessive. Inadequate and incomplete records cause remands.
Piazza is 55 years of age and, according to the young victims, committed numerous indecent acts over an extended time period. Appellant denied that he was guilty of any indecent behavior with the children and does not believe that he is in need of medical or psychological assistance.
The record does not indicate that the trial judge, after giving due consideration to the nature of these offenses and to the presen-tence report, imposed a constitutionally excessive sentence. No doubt he considered mitigating factors in Piazza’s favor. The nature of the crime itself can be directly related to the sentence, and I cannot say that four-year sentences for indecent behavior with young, impressionable children are excessive, although the sentences are to run consecutively.
I would affirm Piazza’s conviction and the four-year consecutive sentences he received.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED
KLIEBERT, J., concurring in part and dissenting in part.
BOWES, J., dissenting.

. For obvious reasons we have deleted the actual names of the victims.