336 So.2d 810 (1976)
STATE of Louisiana, Appellee,
v.
Eddie Lee WADDLES, Appellant.
No. 57288.
Supreme Court of Louisiana.
June 21, 1976.
Dissenting Opinion July 28, 1976.
Rehearing Denied September 10, 1976.
*812 Harry D. Simmons, Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Charles R. Lindsay, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant was convicted of aggravated rape, La.R.S. 14:42, and sentenced to death. On his appeal, he relies upon 47 assignments of error. We find merit in Assignments 3, 33, 39, 40, 41, 44, and 45all relating to the single issue of whether the defendant was denied a fair trial by the incorrect admission of evidence relating to an entirely different offense than that for which the defendant was on trialand, accordingly, must reverse.

I.
In pragmatic terms, the issues posed to us are as follows:
1. Should a death penalty for rape be affirmed, when the sole evidence connecting the accused with the rape is the unexplained presence of his fingerprint at the scene of the crime, although the victim cannot identify him?
Under this statement of facts, arguably there is "some evidence" that the accused committed the proved rape, and the appellate court might be unable to review its sufficiency. See State v. Pryor, 306 So.2d 675 (La.1975). However, we might further posit that it may be unlikely that a jury would find an accused guilty of a capital offense upon such tenuous evidence as to his possible guilt, which must be proved beyond a reasonable doubt.
2. Should the death penalty be affirmed when, in addition to the fingerprint (but in the complete absence of any other evidence connecting the accused with the crime), the jury had before it evidence that in fact the accused had committed a burglary arguably involving an unsuccessful rape attempt upon a different person some five miles distant on an occasion a week later?
Of course, if the defendant had been charged with the subsequent burglary or attempted rape, the jury might reasonably have found him guilty of such non-capital offenses. The pragmatic issue posed is whether, although there is in fact little evidence to support a conviction of the present completed rape (a capital offense), the death penalty should nevertheless be allowed to stand because of the evidence of the other crime(s), the burglary or the attempted rape (non-capital offenses)?

II.
The issue of law posed for us is whether the other offense (the burglary), a crime completely independent of and unrelated to the present offense (the aggravated rape) with which the defendant is accused, is nevertheless admissible in evidence under the limited exceptions and for the limited purposes permitted by La.R.S. 15:445[1] and 446[2], i.e., to show knowledge, intent, or system.
*813 Preliminarily, it is to be remembered that under our law the state has the burden to prove beyond a reasonable doubt the accused's guilt of the specific crime charged, and that proof of present guilt may not properly be made by proof of general bad character or of prior criminal record or of other unrelated criminal activity. To repeat what we stated in our leading decision of State v. Prieur, 277 So.2d 126, 128 (La.1973):
The admissibility of other acts of misconduct involves substantial risk of grave prejudice to a defendant. As to the prejudicial effect of evidence of other crimes, Wigmore says:
"* * * The natural and inevitable tendency of the tribunalwhether judge or juryis to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge. * * *" 1 Wigmore, Evidence § 194 (3rd Ed.).
The probative value of evidence of unrelated offenses in relation to the charged offense should therefore be weighed in light of its possible prejudicial effect, its tendency to influence the triers of fact improperly as to the present guilt of the accused. See Mc-Cormick on Evidence, § 190 (Cleary Ed.1972). . . .
Evidence of crimes related to the offense with which a defendant is charged is inadmissible except under special exceptions.. . . McCormick on Evidence, § 190 (Cleary Ed.1972). Aside from related offenses admissible as part of the res gestae, and convictions admissible for impeachment purposes, Louisiana's statutes provide for only three exceptionsacts relevant to show intent, knowledge or system.
In State v. Moore, 278 So.2d 781 (La. 1973), we said: "* * * [T]here is always this second qualification to the admission of evidence of other offenses in a criminal prosecution: even if otherwise admissible, if the prejudicial effect outweighs the probative value of evidence of other offenses, such evidence should be excluded."
The issue of law thus before us is whether: (1) Was the proof of the burglary (attempted rape) relevant to the issue of the innocence or guilt of the accused as to the present aggravated crime charged?; (2) Even if relevant, did its prejudicial effect outweigh whatever probative value it may have had, so as to require its exclusion as unfairly denying the accused a fair trial upon his guilt or innocence of the present capital crime with which he is charged?

III.
The present crime charged involves a rape of Mrs. A. on November 16, 1974, at about 2:00 a.m. in the morning. While her husband was at work, the assailant broke in through a kitchen window, went to the darkened bedroom of the lady, completely undressed in her room (dropping his clothes on the floor) where the lights were out, and forced her to submit to him (upon her awakening) by threatening her with pliers, part of the household tools.
Mrs. A. could not identify her assailant as black or white (although she knew that he had a mustache, thick lips, and close-cut hair). At the time of her initial complaint to the police, she thought her assailant had about the same build or was maybe a little smaller than her husband, being about five feet ten inches in height and 165 to 170 pounds in weight.[3] At the trial, Mrs. A. was unable to identify the defendant as her rapist.
*814 As soon as her assailant left, Mrs. A. hysterically called a neighbor on her telephone.
A latent fingerprint taken at the kitchen-window entry was later proved to be the defendant's. The identification occurred when he was arrested for the "other" crime a week later, involving Mrs. B. (At that time, under police interrogation, he admitted to having committed a burglary in which he stole some money from a house (unidentified by him but in the general neighborhood as Mrs. A's), which he had entered via a kitchen window. This admission, of course, is probative evidence relative to the present charge.)
The offense involving Mrs. B. occurred on November 23, a week after the rape of Mrs. A. In this later crime, a black man (later identified as the accused) entered Mrs. B's home, apparently by way of an inadvertently unlocked door. He entered her bedroom fully clothed, armed with a gun. He did unzip his trousers (although he never removed them), but Mrs. B. was able to distract him from his purpose (presumably a sexual offense) by pleading with him not to harm her little girl in the next room.
The assailant asked Mrs. B. to fix him a drink, and she did so in the living room. They talked for approximately one hour. He left, taking some money (out of her purse) and her automobile.
As soon as he left, Mrs. B. screamed for help. She was unable to telephone police because he had ripped out her telephone before he left her house.

IV.
The state argues that proof of the Mrs. B. incident was relevant to prove the identity of Mrs. A's rapist. The state argues that evidence that the defendant used the same method of operation, and that system is admissible for this purpose under La. R. S. 15:446: "* * * where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged." See State v. Vince, 305 So.2d 916 (La.1974).
The state argues that the offenses are "similar" for the following reasons: Both offenses occurred in residential neighborhoods in the southern part of Shreveport, about five miles apart.[4] Both involved unauthorized entries in occupied residences with the alleged intent to commit rape and theft. In both instances, the women were alone and were in their own bedrooms, with small children present in the home.[5]
We pretermit whether proof that another crime was committed by the same common system as the offense charged is always relevant to prove that the present accused's identity must be the same as the offender in other crimes because they were committed by the same methodit might well be argued that proof that the accused committed another crime simply proves that he committed another crime, absent the relevance of system to prove some issue in the case or an element or continuity of the crime charged, other than the peripheral similarity of the systems used to *815 commit the crime. See concurring opinions in State v. Thomas, 290 So.2d 690, 694 (La.1974); and State v. Frezal, 278 So.2d 64, 76 (La.1973).
Assuming, however, that the showing of a common system of unrelated crimes might here be relevant to prove the identity of the defendant as the offender in the present case, State v. Vince, 305 So.2d 916 (La.1974), the common system used in both crimes must be so similar and individual as preponderantly to demonstrate that the perpetrator of both must be identical. (In Vince, for instance, in each instance, the perpetrator approached young girls and asked them to help him find his dog, then lured them into a deserted area and then raped them; and the offenses occurred in the same neighborhood within a short time of one another.)
Here, the alleged elements of similarity are common to a large proportion of the rapes reviewed by this court. The mere fact that both homes were in the southern part of the city of Shreveport, a municipality of some two hundred thousand population, is obviously not sufficient similaritythe perpetrator of any other rape in the southern part of Shreveport could, if that were sufficient reason, without more be similarly charged with Mrs. A's rape.
Additionally, as our summary of the two crimes illustrates, there were distinct dissimilarities between the offense against Mrs. A. and that against Mrs. B. For instance Mrs. A's assailant broke in through a window; Mrs. B's entered through an unlocked door. Unlike Mrs. A's assailant, Mrs. B's entered her home armed with a gun. Unlike Mrs. A's rapist, Mrs. B's invader ripped the telephone of the wall to prevent police pursuit. In addition, the approaches as to the two victims were quite different, as noted, as were the offender's actions before and after the victims were awakened.
We hold, therefore, that the evidence as to the dissimilar offense against Mrs. B. in a different neighborhood of the city was not relevant to prove identity or guilt of the defendant in the charge against him of the crime against Mrs. A.

Decree
Accordingly, the conviction must be reversed and the case remanded for a new trial.
REVERSED AND REMANDED.
MARCUS, J., concurs.
SANDERS, C.J., dissents.
SUMMERS, J., dissents and assigns reasons.
SUMMERS, Justice (dissenting).
Eddie Lee Waddles was tried for the aggravated rape of Mrs. A at approximately two o'clock on the morning of November 16, 1974. Exactly one week later, and at the same time of morning, he attempted to commit aggravated rape upon Mrs. B. Shortly after this latter attempt, he was apprehended by police officers while in possession of Mrs. B's property and automobile.
During Waddle's trial for the aggravated rape of Mrs. A, evidence was adduced to establish an attempted aggravated rape perpetrated on Mrs. B in order to show identity, system and intent. This Court reverses Waddles' conviction and sentence, holding that the two offenses were dissimilar, and, therefore, evidence of the crime perpetrated upon Mrs. B was irrelevant to establish the identity of Waddles, or the system he employed or the intent he harbored in committing these two offenses.
Without dwelling upon the similarity of the two offenses, mentioning only that they occurred far apart in south Shreveport, the Court goes to great lengths in an attempt to show their dissimilarity. I cannot *816 agree. In my view the offenses committed by Waddles are similar in many important respects, sufficiently similar to support the ruling of the trial judge that the offense perpetrated upon Mrs. B was relevant in the trial of Mrs. A under principles enunciated in Sections 445 and 446 of Title 15 of the Revised Statutes.
Numerous similarities in the two cases found in the evidence make the events which occurred at the residence of Mrs. B relevant to those which occurred at Mrs. A's residence. These similarities establish that the same system and intent were employed by Waddles whose identity is shown by the fact that he left his fingerprints on the window when he gained entry into Mrs. A's residence to commit aggravated rape there.
The two offenses occurred exactly one week apart. Both occurred at approximately two o'clock on a Saturday morning. Both offenses were in residential neighborhoods in the southern part of Shreveport, less than five miles apart, a part of the city Waddles approached from Keithville, a suburb south of Shreveport.
In both instances Waddles made an unauthorized entry of an occupied residence through an unlocked window or door. At Mrs. A's residence, Waddles tried the back door and found it to be locked. He then went to an unlocked window and gained entrance there. Mrs. B's house was entered through an unlocked door. In each instance his intent was to commit aggravated rape. In each instance the residence he violated was occupied by mothers, alone with their children, with no adult males present. Each attack was launched while the victims lay asleep in their beds.
At Mrs. A's residence her attacker removed the telephone receiver from its cradle in the den to frustrate any call for help by Mrs. A. When he departed Mrs. B's residence Waddles ripped the telephone from the wall to prevent a call for help by Mrs. B.
While Mrs. A's attacker was in her house, he took money from her purse. Waddles took money from Mrs. B's purse while he was in her house.
Mrs. A's attacker had a moustache, thick lips, and close cut hair. Waddles, Mrs. B's attacker, had a moustache, thick lips and close cut hair.
Immediately after she was raped, Mrs. A advised police that the man who raped her was black. She then supplied the best description she could, considering the fact that her attacker was in a dark bedroom and her only opportunity to observe him was under the traumatic and highly emotional sexual encounter. At that time her attacker was choking and strangling her, threatening at the same time to kill her and her children. The Court's dependence upon Mrs. A's failure to identify Waddles more accurately under the circumstances in order to weaken the case against him is, to say the least, reaching out. It is a failure to accept the reality of the case contrary to the ruling of the trial judge and the findings of the jury.
I perceive that the real reason behind the majority reversal of this conviction lies in the "pragmatic terms" it expresses for what it conceives to be the first issue: "Should a death penalty for rape be affirmed, when the sole evidence connecting the accused with the rape is the unexplained presence of his fingerprints at the scene of the crime, although the victim cannot identify him?"
As this statement makes plain, this majority assumes the prerogative of passing upon the guilt or innocence of the accused. Either because of its predelictions against severe punishment for aggravated rape or its objection to the imposition of the death penalty, the majority usurps the jury function contrary to an express constitutional mandate to the contrary. For, in criminal matters, this Court's appellate jurisdiction extends only to questions of law. La.Const. art. V, § 5 (1974).
*817 The wisdom of constitutional enactments limiting this Court's jurisdiction on appeal to questions of law only is not a proper basis for appellate review; nor is it a judicial function to question the wisdom of the law imposing the death penalty in the absence of constitutional infirmity.
By implying that the defendant's fingerprints alone cannot establish his guilt, the Court adopts the view that the evidence is insufficient to warrant a conviction in this capital penalty case. In doing so, aside from disregarding the reliability of fingerprint evidence, the Court passes upon guilt or innocence of the accused and usurps the prerogative of the jury in violation of the Constitution.
I would affirm the conviction.
NOTES
[1] La.R.S. 15:445 provides:

"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction."
[2] La.R.S. 15:446 provides:

"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged." (Italics ours.)
[3] When arrested a week later, the present accused's height was measured at six feet two inches and his weight at 200 pounds.
[4] Although by exact measurement the A and B residences were 4.9 miles distant, under cross-examination an investigating police officer testified, transcript record, Volume III (testimony of April 24, 1975), pp. 27-28:

"Q. They are not in the same neighborhood are they? I mean they are all south of 70th Street but it is not in the same neighborhood?
"A. No, it is in a different community."
[5] Mrs. B. had a five-year old daughter; Mrs. A's children were fifteen, eleven, and six.