345 So.2d 474 (1977)
STATE of Louisiana
v.
Clarence LEDET.
No. 58829.
Supreme Court of Louisiana.
April 11, 1977.
Rehearing Denied May 13, 1977.
*475 Harold L. Savoie, Duson Bar, Inc., Lafayette, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., Byron P. Legendre, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant Clarence Ledet was charged, tried, convicted and sentenced to death for committing the crime of aggravated rape upon one Ms. C in Lafayette, Louisiana in March of 1975. Because we find merit in one of defendant's assignments of error, we will not discuss any of his other assignments, or the propriety of the sentence, but reverse his conviction and sentence and remand the case to the district court.
That assignment in which we find reversible error, assignment number two, concerns the admission into evidence of the testimony of one Ms. D who told the jury of defendant's brutalization and kidnapping of her, and of various sexual offenses committed against her some five months after the rape for which defendant was on trial. In order to understand the error here discussed, some background is necessary. Two days before trial, on June 14, 1976, the state filed notice of intent to introduce extraneous offenses to prove "motive, system, intent and identity." The offenses were described as follows:
". . . the crimes of Kidnapping and Crime Against Nature, which had occurred on August 26, 1975, beginning in Galveston, Texas, leading through Houston, Texas and into Louisiana and ending in Eunice, Louisiana on August 27, 1975. "The State intends to introduce evidence that one [Ms. D] was abducted from the streets of Galveston, Texas at high noon on August 26, 1975 by the defendant, Clarence Ledet, and another male. Thereafter, they drove into the city of Houston, Texas against the will and desire of the victim, [Ms. D]. From the city of Houston, Texas they drove accross [sic] the Louisiana state line into the area of Lake Charles and continuing to the city of Eunice, Louisiana. During this ride, the victim was forced to commit crimes against nature on the defendant, Clarence Ledet. The victim, [Ms. D], was able to escape her abductors in Eunice by jumping from the vehicle and running away and seeking the help of a passing motorist.
"The above evidence is material to the prosecution of Clarence Ledet in that it is similar to the force and fear that was exerted on [Ms. C] in this case. The vehicle used in the crime against [Ms. D] was the same automobile used in the crime concerning [Ms. C]. During the ride, [Ms. D] was threatened and beat about the body, preventing her escape from the vehicle during most of the ride."
No hearing was held in the matter but the state urged, over defendant's objections, that the testimony be allowed so as to prove system and motive. Specifically, the state urged that the system involved was that defendant Ledet took young females previously unknown to him for trips in his car and threatened them with serious bodily harm and committed physical violence upon them. The details of the testimony to be presented by Ms. D and one George Arceneaux, a male companion of Ledet's, was not made known to the trial judge who ruled *476 the evidence admissible. Defendant reserved a bill of exceptions. When the state at trial sought to introduce the extraneous offense testimony, defense counsel again strenuously objected, arguing, as before, that on the authority of State v. Moore, 278 So.2d 781 (La.1973) the evidence was not relevant to a material issue in the case, and that its only purpose was to inflame the jury by showing the defendant's despicable and criminal conduct on another occasion. The trial judge ruled the evidence admissible and permitted its introduction.
When the state filed its notice of intention to introduce evidence of extraneous offenses committed by Ledet, these two legal issues were raised:
1) Was proof of criminal activity with Ms. D relevant to the issue of the innocence or guilt of the accused as to the present charge of aggravated rape; and,
2) Even if relevant, did the prejudicial effect outweigh whatever probative value it may have had so as to require its exclusion as unfairly denying the accused a fair trial upon his guilt or innocence of the crime with which he stands charged.
Initially we note that these two complicated and delicate issues can rarely receive proper consideration by a trial judge without his knowing what the testimony will actually be. In order for this Court to determine whether this case was one of those special cases in which evidence of other crimes is admissible, we must recapitulate the facts surrounding these two separate and unrelated incidents.
On the evening of March 18, 1975, defendant Clarence Ledet went to a house in Eunice, Louisiana where Ms. C, the alleged victim of the crime, was living at the time and was introduced to her there. She left the house voluntarily with him and another female companion and they embarked on a journey that would last until the early hours of the morning, would traverse several Louisiana towns including Ville Platte, Crowley and Lafayette, and would include a visit by the two of them to a motel room in Lafayette. Throughout the evening Ledet cursed Ms. C, forced her to drink whiskey, struck her repeatedly, on one occasion striking her above the eye. Early in the evening Ms. C left Ledet's car in a barroom parking lot and asked Daniel Lee, a stranger to her, to help her get home to see her baby. Mr. Lee, a friend of Ledet's, joined the group and made no effort to help Ms. C get home. Ms. C testified that she never repeated her plea for help, that she never requested help from any of the many people (including bartenders, the motel owner, and even a group of policemen who helped them when their car was towed into Ville Platte after being stuck beside the road) but that she failed to ask for help was because she was afraid of Ledet. She claimed she had seen what she believed to be a knife in his possession. She insisted that her seeming calm during much of this time, her seeming willingness at times to accept Ledet's advances, and her submission to a single act of sexual intercourse in the motel were predicated on her fear of Ledet. It was on her testimony alone that the state could establish that an aggravated rape occurred, because only Ledet and Ms. C were present in the motel room[1] where the charged crime allegedly occurred.
In order to bolster the state's contention that Ms. C was raped by Ledet, the state introduced evidence of an unrelated offense which took place in Louisiana and Texas some five months after the Ms. C incident. *477 As to the later incident, Ms. D testified that she was abducted off the streets of Galveston, Texas, by Ledet and a male companion, who tied her up with towels and gagged her and then held her in the car as it was driven first to Houston and then back to Louisiana. She testified that she was repeatedly beaten, was forced to commit crime against nature on Ledet, and made to submit to an act of attempted sodomy. At about seven o'clock that night, she testified that defendant parked the car on a deserted side road off the highway and told her she could get out if she wanted to. When she did get out to run, defendant chased her, caught her, beat and kicked her, and dragged her back to the car. Inside the car, defendant struck at her head with a knife, exclaiming that he ought to kill her, and cut the hand she raised in protection of her face. She also claimed that Ledet stole twelve dollars from her. Although she reported the incident to police, no charges were prosecuted.
In order for a person to be found guilty of a crime, the state must prove beyond a reasonable doubt that the accused committed the crime with which he stands charged, not that he may have committed it because he is a bad man who has committed other offenses on other occasions. State v. Frederick, 340 So.2d 1353 (La.1976); State v. Slayton, 338 So.2d 694 (La.1976); State v. Gaines, 340 So.2d 1294 (La.1976). Only under certain limited circumstances may the state introduce evidence of other criminal acts committed by an accused. See R.S. 15:481, 491, 495. One of these special circumstances is referred to in R.S. 15:445 and 446 which provide as follows:
"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction."
* * * * * *
"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged."
As we stated in State v. Gaines, supra, at 1296,
"These statutes and the jurisprudence construing them rest on the proposition that if the sole relevance of other acts is to prove the defendant's criminal disposition, then the evidence is inadmissible character evidence. Although it can be effectively argued that evidence of other offenses is inadmissible because it is irrelevant to any issue in the trial for the crime charged, it can also be argued that this character evidence is relevant to guilt generally, because, having committed this kind of crime before, the defendant is at least capable of the criminal activity charged. Under either analysis, however, the evidence has been uniformly excluded due to the fact that the evidence presents an inordinate risk of prejudice. The prejudice results from various factors, among which are: (1) the strong possibility that the jury will be unduly swayed in its determination of guilt merely because the defendant is a `bad man,' (2) the possibility that the evidence may confuse the jury in collateral issues and detract their attention from the main issue of the defendant's guilt for the crime charged, and (3) the danger of unfair surprise.
"Therefore, accepting the argument that this evidence is highly relevant, the evidence is nonetheless excluded, not because it fails to tend to prove the defendant's guilt, but because it does it too well and thereby deprives the `bad man' of the fair trial and benefit of the presumption of innocence and the State's burden of proof. However, when the extraneous offense is logically relevant to prove a material issue before the jury and is not merely offered to prove that on this occasion the accused probably acted in conformity *478 with his `criminal disposition,' then the evidence should not be excluded merely because it shows that the accused has committed other offenses." [footnote omitted]
In State v. Moore, supra, we held that in order for evidence of an extraneous offense to be admissible, it must first be found relevant to a material fact actually at issue, and, second, the court must have weighed its probative value against its inherent prejudicial effect, and found the former predominant. State v. Gaines, supra; State v. Slayton, supra; State v. Clark, 338 So.2d 690 (La.1976); State v. Waddles, 336 So.2d 810 (La.1976); State v. Moore, supra; State v. Prieur, 277 So.2d 126 (La.1973). As these decisions indicate, because of the substantial risk that the extraneous evidence may detract from the constitutional right to be presumed innocent until proven guilty beyond a reasonable doubt of the crime charged, other crimes evidence can only be admitted after a "showing by the State that the evidence of other crimes is not merely repetitive and cumulative, is not a subterfuge for depicting the defendant's bad character or his propensity for bad behavior, and that it serves that actual purpose for which it is offered." State v. Prieur, supra, at 130; see State v. Frederick supra.
Under these legal principles, the evidence of the Ms. D incident was not admissible to prove knowledge or intent because, as we held in State v. Moore, supra, no proof of intent is required in an aggravated rape prosecution. See R.S. 14:42 which defines aggravated rape as "a rape committed where the sexual intercourse is deemed to be without the lawful consent of the female . . ." and R.S. 15:444 which provides that "If a statute has made it a crime to do a particular act, no further proof of intent is required than that accused voluntarily did the act . . . ." In Moore, we explained that a not guilty plea by itself does not make intent an issue, saying that the "prosecution cannot credit the accused with fancy defense in order to rebut them at the outset with some damning piece of evidence." State v. Moore, supra, at 785-86; see also State v. Waddles, supra.
Nor was the question of identity ever at issue. This is not a case where a woman has been assaulted at night by an unknown assailant who is later captured and convicted partially on the basis of some special criminal "signature" which had made this rape, like others with the same "signature," distinctly his. Instead, there was never any question that if Ms. C was raped on the evening in question that Clarence Ledet was the man who did it. Defendant never disputed that both of these women were in his car on the dates in question and that sexual advances were made toward them. His consistent defense, both pre-trial and when he took the stand, was that the sexual encounters between him and these women were business arrangements to which they had consented, and that in fact no crimes occurred on these evenings. The only real issue at trial, then was not who had committed the crime, but whether, in fact, a crime had been committed. In such situation, other crimes evidence established not "identity" but only that Ledet is a "bad man" because he had committed another violent sexual act in the past and that it is therefore likely that he committed the crime for which he now stands charged. State v. Frederick, supra; State v. Harrison, 291 So.2d 782 (La.1974); State v. Moore, supra.
Similarly, the state had no reason to introduce proof of "modus operandi," or system, in this prosecution. In the first place, these two incidents are more noteworthy for their differences than for their similarities. Ms. D was forceably abducted; Ms. C was not. Ms. D was bound and gagged; Ms. C was not. Ms. D was subjected to unnatural sexual activities; Ms. C was not. Ms. D was abused in a car and behind an abandoned service station; Ms. C was taken to a motel. Ms. D was struck by a knife; Ms. C was not. Ms. D was robbed; Ms. C was not. Ms. D was picked up in Texas; Ms. C. in Louisiana. Ms. D was abducted in August of 1975; Ms. C some *479 five months before. Although there are similarities between the two incidentsnotably, the long distance car travel punctuated by beatings and drinking and witnessed by other passengersthese similarities, in the face of the many dissimilarities, would not make the two acts "so similar and individual as preponderantly to demonstrate that the perpetrator of both must be identical." State v. Waddles, supra, at 815. Moreover, proof of system simply is not relevant in a case such as this one where there is absolutely no question that the accused was the person involved in both incidents. The entire point of the state's establishing that a "system" existed is to show that because of the unique aspects of an extraneous crime committed by the accused that he must have been the perpetrator of the crime at issue because it, too, was marked by the same distinctive hallmarks. However, when there is no contest at all over the participation of the accused in the alleged incident, but the only question is whether any crime at all took place, evidence of extraneous offenses serves only to establish that defendant is capable of and thus likely to have committed the crime in question, and as such the evidence is inadmissible.
Because the extraneous evidence was not admissible to prove knowledge, intent, system, or identity, the evidence tended only to prove the bad character of Clarence Ledet, an inquiry prohibited in Louisiana. The evidence of defendant's actions in relation to Ms. D did not tend to show that on March 18, 1975 defendant Ledet aggravatedly raped Ms. C, and such evidence was therefore mistakenly introduced at the trial.
Even were we to find the extraneous act relevant to a material issue in the case (as it clearly was not) we would still
have to decide whether the trial judge erred when he decided that the probative value of the extraneous offense outweighed its prejudicial effect. Initially, we cannot understand how such a determination could even be made by a trial judge without knowing what the testimony would be so as to evaluate it and weigh its prejudicial impact against its probative value. Here, the failure to hold a hearing meant that the trial judge did not know until trial about the aggravated nature of the extraneous offense, details such as the forcible abduction, the binding and gagging, the unnatural sexual acts, the visible presence of a large knife, the robbery, and the cutting of her hand in anger. These aggravating circumstances, none of them present in the crime for which defendant was being tried,[2] painted Ledet as a violent, brutal man and outweighed whatever probative value the evidence might have had so as to require its exclusion as a matter of fundamental fairness under state and federal due process standards. See Hills v. Henderson, 529 F.2d 397 (5th Cir. 1976); State v. Waddles, supra.
Therefore, because the extraneous offense was not relevant to any material matter at issue the evidence was improperly introduced.
Accordingly, for the reasons assigned, the conviction and death sentence of defendant Clarence Ledet are reversed, and the case is remanded to the district court.
SANDERS, C. J., concurs in the decree.
SUMMERS, J., dissents.
MARCUS and DIXON, JJ., concur.
NOTES
[1] The state's witnesses established no physical evidence at all that Ms. C was raped. The coroner who examined Ms. C testified that although he found "mechanical irritation" of her vagina that he found no seminal fluid there and no indication that the irritation had been caused by human insertion. The criminologist who examined the clothes of the pair and the bedclothes testified that she found no rips or tears (other than one broken brassiere strap) or any seminal fluid in any of the material. The officer who took Ms. C's initial complaint to police testified that she reported a beating, not a rape, although later she did report the incident as a rape. Furthermore, it was established at trial that defendant paid her two hundred dollars in exchange for her agreement to drop the rape charges against him, although she testified that she recanted on the deal because of what she considered continued harassment by Ledet and his wife.
[2] In this case, unlike other cases on this issue, see State v. Gaines, supra; State v. Lee, 340 So.2d 1339 (La.1976); State v. Waddles, supra; State v. Clark, supra; State v. Moore, supra; State v. Prieur, supra, the extraneous offense occurred under factual circumstances so much more violent and brutal than the charged offense as to make the evidence too prejudicial for admission even had it been extremely relevant. The prejudice inherent in this situation was exacerbated when defendant, who took the stand in his own defense, was forced to deny or explain not only the details of the charged offense, but also the details of the lurid Ms. D escapade. See State v. Frederick, supra.